SO ORDERED: July 29, 2011.



**Basil H. Lorch III**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: ) | |
| GERALD BRUCE GRINKMEYER and ) | CASE NO. 10-14881-BHL-7 |
| JOAN NOONAN GRINKMEYER, ) | |
| Debtors. ) | |

**ORDER**

This matter comes before the Court on the **United States Trustee's Motion to Dismiss Pursuant to 11 U.S.C. § 707(b)(1), (2), and (3)** filed on December 13, 2010, and the **Objection to Trustee's Motion to Dismiss** filed by the Debtors, Gerald and Joan Grinkmeyer ["Grinkmeyers"] on January 27, 2011. The Court conducted a hearing on the foregoing matter on April 7, 2011, and the parties were given the opportunity to file post-hearing briefs. The **United States Trustee's Brief in Support of Motion to Dismiss**, and a **Brief in Support of Debtors' Objection to Trustee's Motion to Dismiss**, were both filed on April 18, 2011. Additionally, the **United States Trustee's Notice of Submission of Authority in Support of Brief** was filed on July 26, 2011.

The prevailing issue under section 707(b) is whether the Grinkmeyers, for purposes of section 707(b)(2)(A)(iii), may deduct mortgage payments due on a secured debt notwithstanding their

intention to surrender the collateral. A separate issue is presented as to whether the case should be dismissed as an abuse under section 707(b)(1) and (3).

Section 707(b)(2)

Gerald Bruce Grinkmeyer and Joan Noonan Grinkmeyer ["Grinkmeyers"] filed for relief under Chapter 7 of the United States Bankruptcy Code on September 30, 2010, bringing them within the purview of the Bankruptcy Abuse Prevention and Consumer Protection Act ["BAPCPA"]. The first issue before the Court is whether a presumption of abuse arises in this case under section 707(b)(2) of the Bankruptcy Code as amended by BAPCPA. That section ostensibly represents the most significant provision of BAPCPA, generally referred to as the means test, and is used as a screening device to determine whether a chapter 7 proceeding is appropriate for a particular debtor. If the debtor's disposable income, as calculated by the means test, exceeds a certain threshold, the petition is presumptively abusive under section 707(b)(2).

The Grinkmeyers, in calculating their disposable income, included a mortgage expense on real estate which they intend to surrender. Because they will not be making those monthly mortgage payments, the Trustee, relying on *In re Turner*, 574 F.3d 349 (7th Cir. 2009), asserts that the mortgage expense should not be included in the means test calculation as it is not "contractually due" to a secured creditor.[1] If the Trustee is correct, a presumption of abuse arises based upon the Debtors' perceived ability to repay their creditors, and the Debtors' petition must be either converted to a proceeding under chapter 13 or dismissed.

---

[1] In the Seventh Circuit case of *Turner*, a Chapter 13 debtor included a mortgage expense in calculating his projected disposable income on a home that he intended to abandon to the mortgagee. The Court found that the debtor could not utilize a "phantom deduction to reduce the recovery by his unsecured creditors without benefiting any other creditor." 574 F.3d at 356.

Bankruptcy courts have been endeavoring to interpret the means test since BAPCPA's introduction in 2005. The issue currently before this Court has been addressed in whole or in part by courts at every level across the nation with varying conclusions. Recently, however, the Supreme Court has weighed in on the discussion and has provided a glimmer of light in the darkness.

In June, 2010, the Court issued its decision in *Hamilton v. Lanning*, 560 U.S. —, 130 S.Ct. 2464, 177 L.Ed.2d 23, which silenced the ongoing debate of whether a "forward-looking approach" or a "mechanical approach" should be employed in calculating projected disposable income ("PDI"). The Court, embracing the forward-looking approach, held "that when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Id.* at 2478.

In January, 2011, the Supreme Court revisited the issue of projected disposable income in *In re Ransom,* 131 S.Ct. 716, 178 L.Ed.2d 603, where the chapter 13 debtor included a car ownership deduction in calculating his PDI under the means test although he owned his vehicle outright. The Court, in concluding that such expense was inappropriate, found that the plain meaning of the statute required the expense to be "applicable" or appropriate to each particular debtor. The Court's ruling specifically abrogated the Seventh Circuit's decision of *In re Ross-Tousey*, 549 F.3d 1148 (2008) wherein that court had reached the opposite conclusion.

The Debtors, however, assert that the foregoing precedent is inapplicable in the context of a Chapter 7 proceeding and cite *In re Vecera*, 430 B.R. 840 (Bankr. S.D. Ind. 2010) as support thereof. In *Vecera*, Judge Metz found that the mortgage deduction should be allowed for a chapter 7 debtor even when the property is to be subsequently surrendered. While acknowledging that the

Seventh Circuit mandates a different conclusion in the context of a chapter 13 proceeding,[2] the court found that "application of the means test within a chapter 13 case is not interchangeable with its operation within a chapter 7 case." *Id.* at 843; *see also Hilderbrand v. Thomas (In re Thomas)*, 395 B.R. 914, 920 (6th Cir. BAP 2008) ("[T]he question of whether a debtor in a chapter 13 case should be permitted to claim a deduction for collateral the debtor intends to surrender is not so easily resolved [as in a chapter 7 case].")

Though never defined, "projected disposable income" certainly means something different than "disposable income" and only in the context of a chapter 13 proceeding is the concept of PDI relevant. As noted by Judge Metz in *Vecera,* "disposable income" is based solely on historical numbers and regional averages while a debtor's "projected disposable income" necessarily contemplates a forward-looking number. *Id.* at 843. Even the Seventh Circuit acknowledged as much when it stated that "the calculation of 'disposable income' . . . 'is a starting point for determining the debtor's 'projected disposable income' . . . the final calculation can take into consideration changes that have occurred in the debtor's financial circumstances.'"*Turner,* 574 F.3d at 356 (citing *in re Frederickson*, 545 F.3d 652, 659-60 (8th Cir. 2008))

The only circuit court to squarely address this issue is the First Circuit in *In re Rudler*, 576 F.3d 37 (2009). In that case, the court concurred with the "vast majority of bankruptcy courts" which found that a chapter 7 debtor may deduct his mortgage payments under the means test notwithstanding his intent to surrender the property. The court observed that its analysis was strictly limited to a chapter 7 case. *Id.* at 45, fn. 11 (citing *In re Norwood-Hill*, 403 B.R. 905, 910 (Bankr. M.D. Fla. 2009) (explaining that "a distinct analysis" of the provision must be undertaken in Chapter

---

[2] *See In re Turner*, 574 F.3d 349 (7th Cir. 2009).

7 and 13 cases because "there are different considerations with respect to how issues arising under these respective chapters are handled")). Based upon the plain language of the statute, and because Form B22A asks the debtor to provide current information for all secured debt, the court ultimately concluded that a "snapshot" approach to the deduction for secured debts fit within the statutory scheme. *Id.* at 50.

This Court adopts the reasoning set forth in *Rudler* and aligns itself with the majority of courts which allow chapter 7 debtors to deduct mortgage payments on property to be surrendered. In accordance with the foregoing, therefore, the Court finds that the presumption of abuse does not arise under section 707(b)(2).

## Section 707(b)(3)

The U.S. Trustee contends, as an alternative to dismissal under section 707(b)(2), that the chapter 7 filing constitutes an abuse under section 707(b)(1). Dismissal under that section, in turn, relies upon the guidelines set out in subsection (b)(3). That Code section states:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider –
>
> (A)  whether the debtor filed the petition in bad faith; or
>
> (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

Unlike the previous section, the Trustee bears the burden under 707(b)(3) to demonstrate the Debtors' bad faith or to show that the totality of the circumstances indicate abuse. The Trustee has made no allegations of bad faith but relies, instead, on the totality of the circumstances in support of her motion.

BAPCPA amended section 707(b) of the Bankruptcy Code so as to relax the standard for dismissing a petition brought under chapter 7 and characterized as abusive. *See Calhoun v. U.S. Trustee*, – F.3d –, WL 1651228 (4th Cir. 2011) (citing H.R.Rep. No. 109–31(I), at 7–8 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 98–99); *and see In re Rudler*, 576 F.3d at 40. Specifically, the standard for dismissal under section 707(b) was changed from "substantial abuse" to simply "abuse" in furtherance of BAPCPA's overarching goal of curbing chapter 7 filings:

> Dismissal under 707(b) is also authorized when there is "abuse." It is intended that by changing the standard for dismissal from "substantial abuse" to "abuse," stronger controls will be available. . . to limit the abusive use of Chapter 7 based on a wide range of circumstances. The "bad faith" and "totality of the circumstances" of the debtor's situation is adopted as an appropriate standard. It is intended that all forms of inappropriate and abusive debtor use of Chapter 7 will be covered by this standard, whether because of the debtor's conduct or the debtor's ability to pay. . . . Cases which have decided that a debtor's ability to pay should not be considered when determining abuse, or can be outweighed if the debtor is otherwise acting in good faith, are intended to be overruled. . . .

*In re Paret*, 347 B.R. 12, 16 (Bankr. D. Del. 2006) (citing *Bankruptcy Reform Act of 2000 – Conference Report*, 146 Cong. Rec. S11683-02, S11703). It is axiomatic that grounds for dismissal pre-BAPCPA would be determinative under today's lower threshold for dismissal.

BAPCPA itself does not define "totality of the circumstances." Nevertheless, it is well established that a debtor's actual current and future income and expenses, intentions, and resulting ability or inability to pay are crucial to an assessment of the debtor's "financial situation" under section 707(b)(3). *See In re Baeza*, 398 B.R. 692, 698 (Bankr. E.D. Cal. 2008) (the plain language of the statute mandates consideration of the debtor's actual financial situation at the time of filing); *In re Maya*, 374 B.R. 750, 754 (Bankr. S.D. Cal. 2007) (court may consider post-petition events to determine ability to pay, debtor may not rely on payment and expenses surrendered post-petition); *In re Pak*, 343 B.R. 239, 244 (Bankr. N.D. Cal. 2006) (debtor's actual ability to repay nonpriority

unsecured debt may be considered under 707(b)(3)); *In re Paret*, 347 B.R. 12, 17 ("even where application of the means test prevents a presumption of abuse from arising, section 707(b)(3) requires the court to consider the debtor's ability to pay his creditors").

A debtor's ability to pay a significant portion of unsecured debt has been held to be sufficient to establish abuse under section 707(b)(3). *See, In re Booker*, 399 B.R. 662, 666 (Bankr. W.D. Mo. 2009) (ability to pay is primary, if not exclusive, consideration under 707(b)(3)); *In re Hickman*, 2008 WL 2595182 *6 (Bankr. W.D. Wash.) (citing pre-BAPCPA case law and listing post-BAPCPA cases that hold that ability to pay is sufficient to establish abuse under 707(b)(3)); *In re Freis*, 2007 WL1577752 (Bankr. W.D. Mo.); *In re Zaporski*, 2007 WL 1186032 (Bankr. E.D. Mich.); *In re Simmons*, 357 B.R. 480 (Bankr. N.D. Ohio 2006); *In re Pak*, *supra*. Or as one court noted, "dismissal may be warranted on the sole basis that a debtor has the ability to repay some of his debts, but 'dismissal is not mandated on this factor alone.'" *In re Hoffman*, 413 B.R. 191, 195 (Bankr. M.D. Pa. 2008). That court, in fact, identified the following comprehensive list of factors that had been found relevant to a determination under 707(b)(3):

> (1) whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment; (2) whether the debtor made consumer purchases far in excess of his ability to repay; (3) whether the debtor's proposed family budget is excessive or unreasonable; (4) whether the debtor's schedules and statements of current income and expenditures reasonably and accurately reflect his true financial condition; (5) whether the bankruptcy petition was filed in bad faith; (6) whether the debtor enjoys a stable source of future income; (8) whether he is eligible for adjustment of his debts through chapter 13 of the Bankruptcy Code; (9) whether there are state remedies with the potential to ease his financial predicament; (10) the degree of relief obtainable through private negotiations; and (11) whether the debtor's expenses can be reduced significantly without depriving him of adequate food, clothing, shelter, and other necessities.

Turning to the specifics of this case, the Court must consider the income that the Grinkmeyers actually have available to pay nonpriority unsecured debt. The Grinkmeyers have no

dependents. Mrs. Grinkmeyer has been employed by the same employer for eleven years as of the date of filing. Debtors' Schedule I indicates gross monthly income for the Grinkmeyers of $9,194 and net monthly income of $6,355. Schedule J shows monthly expenses of $6,827, which includes a $2,986 mortgage payment on property which is to be surrendered.

Once the Debtors shed their high mortgage payment and substitute a lower housing expense[3], they will have a significant amount per month to dedicate toward payment of their $75,532 in nonpriority unsecured debt. Looking at the Grinkmeyers' schedules, calculation of monthly income and expense, and their actual income and expenditures, this Court is satisfied that the Debtors have the ability to pay a significant portion of unsecured debt so as to establish abuse under section 707(b)(3).

Although additional factors may be pertinent to this 707(b)(3) analysis, all of those factors are related to the Debtors' ability to repay debt. Specifically, the Court finds that the Debtors' housing expense, as scheduled, is excessive and that the schedules do not reasonably and accurately reflect the Debtors' true financial condition. Both Debtors are currently employed and although Mr. Grinkmeyer has only been in his job a short while, Mrs. Grinkmeyer is gainfully employed and enjoys a stable source of future income. As such, the Debtors are eligible for chapter 13 relief and have the ability to fund a plan.

Based upon the foregoing, the Court now **GRANTS** the Trustee's Motion to Dismiss pursuant to 11 U.S.C. § 707(b)(3) and **HEREBY ORDERS** that this case be dismissed pursuant to such section unless the Debtors convert the case to a proceeding under Chapter 13 within twenty (20)

---

[3] The Debtors testified at an April 7, 2011 hearing that they were trying to locate rental housing. Mr. Grinkmeyer suggested that a rental expense of up to $1,500 per month might fit into their budget.

days of the entry of this Order.

**IT IS SO ORDERED.**

# # #